FILED

MAR 1 7 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARC K. SELLERS,

                          Plaintiff,                                    Civ. No. 08-553-AC

              v.                                          OPINION AND
                                                            ORDER

INTERNAL REVENUE SERVICE,

                          Defendant.

ACOSTA, Magistrate Judge:

*Introduction*

    Plaintiff Mark K. Sellers ("Sellers") brings this action against defendant Internal Revenue

Service ("the IRS") under the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552.

Sellers submitted a FOIA request pertaining to tax policies affecting the Commonwealth of Northern

OPINION AND ORDER                          1                                    {KPR}

Mariana Islands ("CNMI"). Sellers alleges that the IRS wrongfully withheld documents that should have been disclosed under FOIA, and he filed suit in this court seeking to compel the IRS to release the requested information. The IRS now seeks summary judgment.

The IRS is entitled to summary judgment. The record shows that the IRS conducted a reasonable and adequate search and that it has properly withheld only those documents or segregable portions of documents exempted from disclosure. There is no suggestion in the record that the IRS has proceeded in bad faith, and no inconsistencies among the explanations the IRS provided for its response to Sellers's request. Accordingly, the court grants summary judgment in favor of the IRS.[1]

*Factual Background*

On March 19, 2008, Sellers submitted a FOIA request by letter to the IRS at its Disclosure Office in Seattle, Washington. (IRS's Concise Statement of Material Facts ("CSMF") ¶ 3.) The letter referenced a portion of IRS Publication 80 from January 2007, which "state[d] that nonresident aliens under Sections 101(a)(15)(F), (J), (M), or (Q) of the Immigration and Nationality Act admitted as contract workers to the Commonwealth of the Northern Mariana Islands are 'exempt' from Social Security and Medicare (FICA) employment taxes."[2] (Complaint ("Compl."), Exhibit ("Ex.") A at 1.) The FOIA request sought information related to this specific determination by administrative agencies of the United States, in particular the IRS and the Department of the Treasury ("DOT"). (Compl., Ex. A at 2.)

Sellers requested the relevant information specifically in the form of DOT administrative files

---

[1] The parties have consented to jurisdiction by magistrate in accordance with 28 U.S.C. § 636(c)(1).

[2] The actual request referenced "FICA tax *and* FICA withholding." (Compl., Ex. A at 2. (emphasis added).)

OPINION AND ORDER                    2                    {KPR}

and, to the extent not contained in DOT files, documents and files in possession of the IRS, documents prepared by independent consultants, and documents obtained pursuant to summonses to third parties. In addition, Sellers requested a list of electronically maintained information organized by subject matter and format, as well as all relevant internal memos and legal opinions. The request specifically referred to IRS Publication 80 (Circular SS), Federal Tax Guide for Employers in the U.S. Virgin Islands, Guam, American Samoa, and [CNMI], Revised January 2007 specific and its exemption of contract workers from FICA taxes. The request pointed out that a prior version of this publication, (hereinafter "IRS Publication 80") stated that such employees were not exempt from FICA withholding, and attached a previous version of IRS Publication 80, this one revised in January 2004.

The request was transferred to the IRS's office in Ogden, Utah. In an April 18, 2008, letter, the IRS in Ogden "inform[ed] [Sellers] that it was unable to respond to the request within the 20 business-day period prescribed by law and invok[ed] the additional ten-day statutory extension, extending the statutory response date to May 2, 2008." (IRS's CSMF ¶ 4.) After the statutory response date was not met, Sellers filed in federal district court on May 7, 2008. (IRS's CSMF ¶ 5.) According to the IRS, "[a]t the time this suit was filed, the disclosure specialist assigned to the case had not yet commenced a search for responsive documents," and Jason Bremer ("Bremer"), an IRS attorney, took over the search for responsive documents. (IRS Memorandum ("IRS Memo.") 6-7.)

*Legal Standard*

A.    Generally

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2008).  Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.  A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).  Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits.  The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (2008) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Therefore, where "the record taken as

OPINION AND ORDER                              4                                    {KPR}

a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(internal quotations marks omitted).

B.    FOIA Cases

Summary judgment typically is used to decide FOIA cases. *Manna v. United States*

*Department of Justice*, 832 F. Supp. 866, 870 (D.N.J. 1993). To establish that summary judgment

is appropriate in favor of the government in a FOIA case, the government must prove "that each

document that falls within the class requested either has been produced, is unidentifiable, or is

wholly exempt from [FOIA's] inspection requirements." *National Cable Television Ass'n, Inc. v.*

*Federal Communications Comm'n,* 479 F.2d 183, 186 (D.C. Cir. 1973); *see also Marks v. U.S. Dept.*

*of Justice,* 578 F.2d 261, 262 (9th Cir. 1978) (citing *National Cable*). To qualify for summary

judgment, the "agency must: 'demonstrate that it has conducted a "search reasonably calculated to

uncover all relevant documents."'" *Zemansky v. United States Environmental Protection Agency*,

767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. United States Dept. of Justice*, 745 F.2d

1476, 1485 (D.C. Cir. 1984)). "In demonstrating the adequacy of the search, the agency may rely

upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky,* 767 F.2d

at 571 (citing *Weisberg,* 745 F.2d at 1485). Such "affidavits are accorded a presumption of good

faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability

of other documents.'" *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)

(quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

The agency has the burden of establishing that one or more of FOIA's nine exemptions

justify its withholding of documents. *Hronek v. Drug Enforcement Agency, et al.*, 16 F. Supp. 2d

1260, 1266 (D. Or. 1998) (citing 5 U.S.C. §§ 552(a)(4)(B), 552(b)); *Manna*, 832 F. Supp. at 875. The agency may satisfy this burden by submitting an affidavit or index containing reasonably detailed descriptions of the documents and alleging facts sufficient to establish an exemption. *Lewis v. Internal Revenue Service,* 823 F.2d 375, 378 (9th Cir.1987). The affidavit must be provided by the agency employee responsible for supervising the search; an affidavit from each person who participated in the actual search is not required. *Hronek*, 16 F. Supp. 2d at 1267-68 (citing *Carney v. U.S. Dept. of Justice*, 19 F.3d 807, 813 (2d Cir. 1994)). If the agency supplies reasonably detailed materials, "then the district court need look no further in determining whether an exemption applies." *Church of Scientology v. U.S. Dept. of Army,* 611 F.2d 738, 742 (9th Cir. 1979).

The agency's responsibility to provide appropriate affidavits, indexes, and other materials is key to the court's and plaintiff's ability to assess the agency's response. Because of the unique nature of FOIA cases, the plaintiff does not have access to the withheld materials and is at a "distinct disadvantage" in attempting to controvert the agency's claims, *Maricopa Audubon Society v. United States Forest Service*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quoting *Ollestad v. Kelley*, 573 F.2d 1109, 1110 (9th Cir. 1978)), and "only the party opposing disclosure [has] access to all the facts." *Id.* (citing *Weiner v. Federal Bureau of Investigation.*, 943 F.2d 972, 977 (9th Cir. 1991)). Thus, the agency is required to submit affidavits and other materials that are sufficiently detailed and made in good faith. *Simmons v. United States Dept. of Justice*, 796 F.2d 709, 711-12 (4th Cir. 1986). This is particularly true in the Ninth Circuit, which requires agencies to "explain the reasons for withholding documents with specificity by 'tailor[ing] the explanation to the specific document withheld.'" *Hronek*, 16 F. Supp. 2d at 1265-66 (citing *Wiener*, 943 F. 2d at 979). Consequently, the agency must disclose as much information as possible, and state its objections with sufficient

specificity, without compromising the information it claims is exempt from disclosure. *Lewis*, 823 F.2d at 378; *Wiener*, 943 F.2d at 979.

To accomplish these competing goals, the agency must provide where appropriate a *Vaughn* index, which "identifies each document withheld and the statutory exemption claimed for each document, and sets forth 'a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption.'" *Maricopa Audubon Society*, 108 F.3d at 1092 n.1 (quoting *Wiener*, 943 F.2d at 977); *Patterson v. Federal Bureau of Investigation*, 893 F.2d 595, 599 n.7 (3d Cir.), *cert. denied*, 498 U.S. 812 (1990). The purpose of the index is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King v. Dept. of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987). The court also may perform *in camera* review, in its discretion, where "the affidavits are 'too generalized,' . . . in order to make 'a first-hand determination of their exempt status.'" *Lewis*, 823 F.2d at 378 (quoting *Church of Scientology*, 611 F.2d at 742). However, such review shall neither excuse the government from meeting its burden, nor shall it occur when the government's burden is otherwise met. *Id.*

In addition, an agency must also demonstrate that it has not applied FOIA's exemptions in an over-inclusive fashion. *Davin v. U.S. Dept. of Justice*, 60 F.3d 1043, 1053 (3d Cir. 1995). An agency may not withhold an entire document if only part of its content is exempted from disclosure; where possible, reasonably segregable non-exempt information must be provided to the requester. *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974); *Lame v. United States Dept. of Justice*, 654 F.2d 917, 921 (3d Cir. 1981). The district court also must specifically assess segregability as to each document withheld. *Wiener*, 943 F.2d at 988.

Once the government has met this burden, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Carney*, 19 F.3d at 812-13 (9th Cir. 1994) (internal citation omitted). Alternatively, the plaintiff must present evidence to controvert the agency's showing that no undisclosed documents were contained in its relevant files. *Mutual Fund Investors v. Putnam Management Co.*, 553 F.2d 620, 624 (9th Cir. 1977). Or, the plaintiff must show inconsistency in the agency's proof. *Manna*, 832 F. Supp. at 875. In any event, conclusory allegations unsupported by factual data will not create a triable issue of fact. *California ex rel. Dept. of Transportation v. United States, etc.*, 561 F.2d 731, 733 n.4 (9th Cir. 1977).

C.    Standard of Review

The decision by an agency that documents requested by the public under FOIA are subject to disclosure is reviewable by the federal courts under the Administrative Procedures Act (5 U.S.C. §§ 702, 706) ("the APA"); *see Chrysler Corp. v. Brown,* 441 U.S. 281 (1979) (analyzing FOIA request under APA); *see also Klamath Siskiyou Wildlands Center v. U.S. Dept. of Interior*, No. 07-325-CL, 2007 WL 4180685, at *4 (D. Or. Nov. 21, 2007) (applying APA standard of review to response to FOIA request). The court reviews *de novo* all relevant questions of law, statutory and constitutional interpretation, and meaning or applicability of terms. 5 U.S.C. § 706. The court reviews the agency's actions, findings, and conclusions under the arbitrary and capricious standard. 5 U.S.C. § 706(2)(A). *See also Frazee v. Forest Service, U.S. Dept. of Agriculture*, No. 94-1007-AS, 1995 WL 917631, at *3 (D. Or. March 5, 1995) (citing § 706(2)(A) as the appropriate standard of review).

The arbitrary and capricious standard requires the court to carefully review the record to ascertain whether the agency decision is "founded on a reasoned evaluation 'of the relevant factors' and whether there has been clear error in judgment." *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971)). The inquiry must be searching and careful, but the standard of review is a narrow one. *Id.* An agency's decision may only be called arbitrary and capricious "if the agency relied on factors which Congress did not intend it to consider; entirely failed to consider an important aspect of the problem; offered an explanation for its decision that runs counter to the evidence before the agency; or offered an explanation that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Southwest Center for Biological Diversity v. U.S. Forest Service,* 100 F.3d 1443, 1448 (9th Cir.1996) (citations omitted).

## Discussion

FOIA "mandates a policy of broad disclosure of government documents when production is properly requested." *Church of Scientology of California,* 611 F.2d at 741-42. The Act states, in part, that each governmental agency ". . . upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the record promptly available to any person." 5 U.S.C. § 552(a)(3). This requirement is subject to nine specific exemptions, as outlined in 5 U.S.C. § 552(b). *See id.* ("When a request is made, an agency may withhold a document, or portions thereof, only if the information contained in the document falls within one of nine statutory exemptions to the disclosure requirement contained in § 552(b)."). "These statutory exemptions are exclusive and must be narrowly construed." *Manna,* 832 F. Supp. at 870 (citing *Department of Air Force v. Rose,*

425 U.S. 352, 361 (1976)).

In the present case, the IRS moves for summary judgment on the basis that it performed a reasonable search responsive to Sellers's request and that all responsive documents not produced were properly withheld under an authorized exemption. In support of these contentions, the IRS submitted two declarations from Bremer, an attorney in Branch 7 of the Office of the Associate Chief Counsel (Procedures and Administration) of the IRS. Attached to Bremer's second declaration is a *Vaughn* index. The IRS offers these declarations and index to meet its dual burdens to describe the adequacy of the search and the propriety of the exemptions.

As an initial response, Sellers protests that he is unable to adequately respond to the motion because he lacks access to the allegedly exempt information and, thus, cannot establish that the information has been inappropriately withheld. As noted above, however, this is not unusual in FOIA cases; in fact, a plaintiff typically does not have access to the withheld materials and is at a "distinct disadvantage" in attempting to controvert the agency's claims. *Maricopa Audubon Society*, 108 F.3d at 1092. Accordingly, the court now considers the core issues of Sellers's FOIA request, the reasonableness of the IRS's search and whether the IRS withheld documents appropriately.

A.    The FOIA Search

"To meet its burden to show that no genuine issue of material fact exists, with the facts viewed in the light most favorable to the requester, the agency must demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Weisberg*, 745 F.2d at 1485 (quoting *Weisberg v. Department of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983); cited by *Zemansky*, 767 F.2d at 571). This inquiry focuses on the search itself, not the result.

The question is not "whether there might exist any other documents possibly

responsive to the request, but rather whether the *search* for those documents was *adequate*. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."

*Steinberg v. United States Department of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg*, 745 F.3d at 1485 (emphasis in original)). In support of its motion, the IRS submitted the Declaration of Jason A. Bremer dated September 24, 2008, (hereinafter "Bremer Decl. I"), and the Second Declaration of Jason A. Bremer dated October 20, 2008, (hereinafter "Bremer Decl. II"). The IRS also submitted a copy of the Tax Coordination Agreement Between the United States of America and the Commonwealth of the Northern Mariana Islands.

*1.    Bremer Declaration I*

In his September 24, 2008, declaration, Bremer states that he is an attorney with the IRS responsible for assisting the DOJ with FOIA lawsuits brought against the IRS. (Bremer Decl. I ¶ 1.) His job duties require familiarity with FOIA's requirements, including segregability, with FOIA's exemptions, and with the various categories of documents the IRS creates and maintains. (Bremer Decl. I ¶¶ 1, 3.) Bremer also states that he "personally reviewed the documents at issue and [is] familiar with the issues in this lawsuit." (Bremer Decl. I ¶ 2.)

Bremer describes the steps he and his reviewer took in conducting a search responsive to Sellers's FOIA request. (Bremer Decl. I ¶¶ 6-10.) Prior to Bremer's assignment to the case, the IRS had not initiated a search. (Bremer Decl. I ¶ 6.) Bremer read Sellers's request as seeking "records pertaining to the changes to [IRS Publication 80], as well as records pertaining to the IRS's 'determination' to exempt nonimmigrant CNMI employees from FICA." *Id.*

Because Sellers's request had been transferred to the IRS's Ogden, Utah office, Bremer contacted Robert Maestas, Disclosure Specialist, at that office, as well as the FOIA headquarters

office, to learn the status of their search efforts. (Bremer Decl. I ¶ 7.) Bremer learned that Maestas had forwarded Sellers's request to the FOIA headquarters office because none of the requested records were kept at the Ogden office. *Id.*

With regard to Internal Revenue Code §§ 3101-3127, Bremer communicated Sellers's FOIA request to Janine Cook, "a branch chief in the employment branch of the Office of the Associate Chief Counsel, Tax Exempt and Government Entities[.]" (Bremer Decl. I ¶ 8.) Cook responded that there was no specific file, but that she had emails pertaining to IRS Publication 80. *Id.* Cook forwarded those emails to Bremer. *Id.*

Mae Lew of the Office of Associate Chief Counsel, International, received Sellers's FOIA request and "advised that the IRS had NOT made a 'determination' that nonimmigrant CNMI employees were exempt from FICA taxes." (Bremer Decl. I ¶ 9; original capitalization.) Lew also compiled her and others' emails that discussed IRS Publication 80 and forwarded them to Bremer, but advised that they were likely exempt under 5 U.S.C. § 552(b)(5), the exemption governing privileges. (Bremer Decl. I ¶ 9.)

Finally, Bremer contacted Barbara Bradley, Chief, Corporate Section, Tax Forms and Publications, the office having subject matter jurisdiction over the publication of forms. (Bremer Decl. I ¶ 10.) Bradley advised that Yvette Lawrence, a Tax Law Specialist, was the person responsible for IRS Publication 80 files. *Id.* Lawrence "provided documents relating to Plaintiff's FOIA request pertaining to [IRS Publication 80]." *Id.*

2.     *Bremer Declaration II*

In support of the IRS's reply, it submitted a second declaration from Bremer, dated October 20, 2008, offered "to address several issues raised by the plaintiff in his opposition," (IRS's Reply

4.), in which Bremer described the process by which the IRS creates, reviews, revises, and approves its tax forms. Typically, the current form is sent to the department within the Office of Associate Chief Counsel with "jurisdiction" over the information or "taxpayer segment to which the form or publication pertains." (Bremer Decl. II ¶ 2.) According to Bremer, the offices with such expertise related to IRS Publication 80 are Associate Chief Counsel, International ("ACCI"), Associate Chief Counsel, Tax Exempt/Government Entities ("CC:TEGE"), and the Social Security Administration ("SSA"). *Id.* Sellers originally requested information pertaining to the IRS's "determination" to exempt contract workers in CNMI from FICA taxes and withholding. According to Bremer, "the IRS never made such a 'determination.' Consequently, there are not records responsive to that portion of the request." (Bremer Decl. II ¶ 5.)

Bremer states that a separate matter relating to IRS Publication 80 had arisen, regarding an error in the 2005 version, and resulting in communications between and among the related agencies and departments. (Bremer Decl. II ¶ 6.) Bremer claims the deliberative process privilege as to such communications, and those documents are specifically identified in the IRS's *Vaughn* index. *Id.* Bremer also states that the "Associate Offices ACCI and TEGE learned that a number of claims for refund of FICA taxes were filed on behalf of workers in the CNMI, i.e., third party taxpayers." (Bremer Decl. II ¶ 7.) Bremer claims the attorney-client privilege and attorney work-product privilege exempt briefing materials and e-mails in which these claims are discussed, and in which recommendations and opinions are offered regarding the claims' legal merits. (Bremer Decl. II ¶¶ 7, 8.) Bremer again cites to the *Vaughn* index to reference the specific documents. (Bremer Decl. II ¶ 15.)

The IRS also "has a bilateral tax agreement with CNMI that provides for the exchange of tax

information through each government's competent authority." (Bremer Decl. II ¶ 10.) The IRS

produced that document in its entirety but withheld e-mail exchanges about the convention, pursuant

to Exemption 3. (Bremer Decl. II ¶ 10.) The IRS also redacted tax return information of other

taxpayers. (Bremer Decl. II ¶ 9.) Bremer explained that, consistent with Exemption 7, information

gathered during investigation of civil claims on behalf of various taxpayers also was withheld.

(Bremer Decl. II ¶ 11.) Bremer finally asserts that portions of information that Sellers now seeks are

outside the scope of his original FOIA request, namely information pertaining to the "(President)

Bush Economic Program." (Bremer Decl. II ¶ 14.)

Bremer attached two documents to his second declaration. The first, Exhibit A, is the tax

coordination agreement between the United States and CNMI. The second, Exhibit B, is a document

entitled "List of documents and FOIA exemptions," which Bremer refers to as a "privilege log" but

which clearly is intended to serve as the IRS's *Vaughn* index. The nine-page *Vaughn* index

identifies each document or document group by Bates number, the date or dates of the documents,

provides a detailed description of the document or documents withheld, and identifies the specific

FOIA exemption or exemptions the IRS relied upon in withholding all or a portion of each

referenced document. (Bremer Decl. II, Ex. B.) The 372 individually numbered pages referenced

in the index are separated into three groups, entitled "International," "CC: Tax Exempt/Government

Entities," and "Forms and Publications." (Bremer Decl. II, Ex. B at 1, 7, 8.)[3]

3.    *Adequacy of the search*

According to the IRS, "[t]hese steps clearly satisfied the Service's duty to undertake a search

---

[3] These documents will hereinafter be referred to, first, by the relevant section, i.e., "Int'l,"
"CC:TEGE," and "F/P," and, second, by their Bates Numbers in three digit format, omitting the two
preceding zeroes as superfluous.

reasonably calculated to produce all relevant documents." (IRS's Memo. 8.) Thus, it argues, its search was adequate. In fact, Bremer describes a thorough search process aimed at the likely locations for the documents Sellers requested, and which engaged the appropriate agency personnel to confirm whether or not the documents were available, all of which was "reasonably calculated to uncover all relevant documents." *Weisberg*, 745 F.2d at 1485. Sellers does not dispute the IRS's characterization of its search as adequate, nor does he argue that the search was unreasonable either in method or scope. Given Bremer's detailed description and the absence of any basis to question that presumption, and in light of the presumption of good faith applicable to the IRS's affidavits, the court finds that the IRS conducted a legally adequate search and that it has met its burden on this point.

B.    The Exemptions

The IRS asserts that, after conducting a legally adequate search, it withheld certain documents and information consistent with FOIA's nine exemptions, set forth in 5 U.S.C. § 552(b). In particular, the IRS claims exemptions for information specifically exempted by statute; inter- and intra-agency communications subject to legal privilege; files that, if disclosed, would constitute a violation of personal privacy; and material relating to law enforcement, the disclosure of which would constitute a violation of personal privacy. These exemptions are codified at 5 U.S.C. § 552(b)(3), (5), (6), and (7)(C), respectively.

1.    *Exempted by statute*

Subsection (b)(3) of 5 U.S.C. § 552 (hereinafter "Exemption 3") exempts from production under FOIA information "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no

OPINION AND ORDER                            15                            {KPR}

discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3) (2008). The IRS applies Exemption 3 in conjunction with sections 6103 and 6105 of the Internal Revenue Code. Indeed, "Section 6103 of the Internal Revenue Code . . . has been held to qualify as an [E]xemption 3 statute." *Willamette Industries, Inc. v. United States*, 689 F.2d 865, 867 (9th Cir. 1982) (internal citation omitted). Section 6105 has similarly been applied in conjunction with Exemption 3. *See Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1147 (9th Cir. 2008) (analyzing a FOIA request under Exemption 3 and applying, "26 U.S.C. § 6105(a), a provision of the Internal Revenue Code prohibiting the disclosure of tax-convention information . . . .").

<u>(a)</u>      <u>Section 6103</u>

This statutory section "establishes both the general rule that tax return information is not subject to disclosure and the exemptions to the rule." *Pac. Fisheries, Inc. v. IRS*, No. C04-2436JLR, 2006 U.S. Dist. LEXIS 35288, at *9 n.1 (W.D. Wash. June 1, 2006). Section 6103 of the Internal Revenue Code prohibits a government officer or employee from revealing "any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section." 26 U.S.C. § 6103(a) (2008). The section has been amended to "[provide] that the term 'return information' 'does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.'" *Willamette Industries, Inc.*, 689 F.2d at 867 (citing 26 U.S.C. § 6103(b)(2)). In addition, FOIA's segregability requirement applies such that a record cannot be withheld simply because it contains some amount of exempt information. Rather, the service must disclose "[n]on-exempt portions of a document . . . unless they are inextricably intertwined with exempt portions." *Id.* at

867-68. Therefore, the IRS must withhold return information that would tend to identify a particular taxpayer, but it must disclose non-identifying information even where it appears alongside exempt information so long as the two can be reasonably segregated.

The IRS cites section 6103 as "authoriz[ing] the Service's decision to withhold in part or in full documents that are the actual tax returns of third parties," as well as documents referencing third party return information, taxpayer identities, or investigations and audits of third party taxpayers for violating the Internal Revenue Code. (IRS's Memo. 2.)  According to the IRS's *Vaughn* index, Exemption 3 and Section 6103 were applied to Int'l #016, 061, 062, 066, 071, 073, 090-099, and CC:TEGE #036-042.   The IRS redacted "the tax return information, as defined by I.R.C. [§] 6103(b)(2)(A), of taxpayers other than the plaintiff.   Accordingly, the service has redacted this material . . . to protect the return information of third party taxpayers."  (Bremer Decl. I ¶ 13.)

The *Vaughn* index is consistent with this statement.   The exemption is applied to emails "discussing [third] party claims for FICA refunds."  (Int'l #015, 016, 062, 066-071, 072.)  The exemption is also applied to an inter-IRS memo regarding "claims filed for FICA tax refunds by [third] party taxpayers . . . ."  (Int'l 090-099.)  The exemption is again applied to IRS emails regarding CNMI workers and third party taxpayers. (CC:TEGE #036-042.) In addition, the privilege log entries typically state that only a few lines or a paragraph were withheld pursuant to this exemption, consistent with the purpose and function of Exemption 3 of withholding tax return information identifying a particular taxpayer and with the Act's segregability requirement. Because this document is afforded a presumption of good faith and the exemption appears to have been applied appropriately, the court finds that the IRS properly withheld documents under Exemption 3 and complied with its obligation to segregate information producible to Sellers from information

OPINION AND ORDER                    17                    {KPR}

required to be withheld pursuant to Exemption 3 and in conjunction with section 6103.

      <u>(b)</u>      <u>Section 6105</u>

The IRS cites 26 U.S.C. § 6105 as "support[ing] the withholding of documents that constitute tax convention information which cannot be disclosed unless the treaty partner agrees to its disclosure." (IRS's Memo. 2.) This statute generally exempts tax convention information from disclosure, but provides for specific exceptions. The first three exceptions are plainly inapplicable here: Sellers is not a person or authority specifically exempted by the tax convention itself; Sellers does not seek disclosure of "procedural rules regarding applications for relief under a tax convention"; and Sellers is not a federal employee seeking information pursuant to administration of federal laws not related to tax administration. 26 U.S.C. § 6105(b)(1)-(3) (2008). The fourth exception provides for disclosure where "the Secretary determines, after consultation with each other party to the tax convention, that such disclosure would not impair tax administration," though it does not apply to information regarding a specific taxpayer. 26 U.S.C. § 6205(b)(4) (2008).

The *Vaughn* index lists four instances where Exemption 3 in conjunction with section 6105 was applied, one of which is a duplicate. The withheld documents are, specifically, an email between Dee Robinson ("Robinson") and the Director of Finance, CNMI; a forwarded copy of the email between Robinson and the Director of Finance, CNMI; an email from a CNMI attorney to Robinson, subsequently forwarded to ACCI attorneys; and a duplicate of the email between Robinson and the Director of Finance, CNMI. The IRS characterizes these documents as "communications of tax convention information between the IRS competent authority and her counterpart in CNMI." (Def.'s Memo. 11.) Sellers has presented no evidence or argument that the information qualifies for an exception to section 6105 or that CNMI has consented to its disclosure.

OPINION AND ORDER           18           {KPR}

Because the IRS and CNMI have a bilateral tax agreement, these documents are exempt from disclosure under Exemption 3 in conjunction with section 6105.

> 2.    *Agency communications subject to privilege*

Subsection (b)(5) of 5 U.S.C. § 552 (hereinafter "Exemption 5") exempts from production under FOIA "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (2008). The IRS cites this exemption "in conjunction with the governmental deliberative process privilege" to justify withholding of documents containing "advisory opinions and recommendations of [the Office] of Chief Counsel or agency personnel." (IRS's Memo. 2.)

The United States Supreme Court held that "Exemption 5 simply incorporates civil discovery privileges: 'The test under Exemption 5 is whether the documents would be "routinely" or "normally" disclosed upon a showing of relevance.'" *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984) (quoting *Federal Trade Commission v. Grolier Inc.*, 462 U.S. 19, 26 (1983)). The exemption is "interpreted to encompass, *inter alia*, three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002) (citing *Burka v. HHS*, 87 F.3d 508, 516 (D.C. Cir. 1996)). The IRS cites each of these three privileges as authority for its withholdings.

> (a)    Deliberative process privilege

The deliberative process privilege generally "shields from public disclosure confidential inter-agency memoranda on matters of law or policy." *National Wildlife Federation v. United States Forest Service*, 861 F.2d 1114, 1116-17 (9th Cir. 1988) (citing *Wolfe v. Department of Health and Human Services*, 839 F.2d 768, 772 (D.C. Cir. 1988) (en banc)). Documents protected by the

deliberative process privilege "must be *both* (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" *Id.* at 1117 (emphasis in original) (quoting *Jordan v. United States Department of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)).

This privilege applies to documents that are both deliberative and factual, to the extent that disclosure of factual information would reveal the deliberative process itself. *See Wolfe*, 839 F.2d at 774 ("In some circumstances, even material that could be characterized as factual would so expose the deliberative process that it must be covered by the [deliberative process] privilege."); *see also Russell v. Department of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) ("Where, however, disclosure of even purely factual material would reveal an agency's decision-making process [Exemption 5] applies." (citing *Mead Data Central, Inc. v. U. S. Department of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977))).

In analyzing this privilege, it is helpful to keep the policy reasons that underlie the privilege in mind, of which there are essentially three:

> First, it protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon. And third, it protects the integrity of the decision-making process itself by confirming that 'officials should be judged by what they decided[,] not for matters they considered before making up their minds.'

*Russell*, 682 F.2d at 1048 (quoting *Jordan*, 591 F.2d at 772-73).

The IRS asserts the deliberative process privilege to prevent disclosure of discussions among staff attorneys and IRS authorities regarding IRS Publication 80, specifically the details of changes made to IRS Publication 80. The IRS also claims the privilege for predecisional discussions

OPINION AND ORDER                              20                                    {KPR}

regarding potential claims from CNMI attorneys, errors in IRS Publication 80, and potential improvements to IRS forms. Finally, the IRS asserts this privilege as to comments by ACCI and CC:TEGE regarding the 2008 version of IRS Publication 80. The IRS argues that, until the forms are published, i.e., made available to the public, they are not final and discussions about them are predecisional and deliberative. Further, all of the above categories of information reflect only the personal views of IRS employees and do not represent a final agency position. Therefore, the IRS argues, they must be protected under the deliberative process privilege.

The *Vaughn* index shows that the IRS asserts the deliberative process privilege to withhold emails, in whole or in part, between attorneys and employees of ACCI, CE:TEGE, CC:Small Business/Self Employed ("CC:SBSE"), CC:Administrative Provisions and Judicial Practice ("CC:APJP"), Forms and Publications, Counsel to the National Taxpayer Advocate, the IRS, and CNMI regarding IRS Publication 80, changes to IRS Publication 80, tax treatment of CNMI workers, and treatment of third party claims for FICA refunds pursuant to versions of IRS Publication 80. This category represents the bulk of documents withheld under the deliberative process privilege and includes: Int'l #002, 008-014, 016, 020-026, 028, 029, 031-036, 038-053, 055-057, 060, 063, 067-072, 074, 076-089, 100-118, 120, 121, 124, 125, 132, 134-136, 138, 139, 141-150; CC:TEGE # 001, 002, 031-038, 040, 042, 043; F/P #001-004, 013-017, 096, 100, 101, 142.

Other withholdings include memoranda regarding treatment of claims for FICA refunds, Int'l #004-007, 090-099, and notes by a CC:TEGE attorney made while drafting a memorandum about CNMI employees issues, Int'l #064-065. All other withholdings are in the Forms and Publications section and relate to the process by which versions of IRS Publication 80 were created.

The IRS contends, "[d]iscussions in emails concerning changes to [IRS Publication 80] and

the effect that it has on claims filed by a taxpayer, reflect nothing more than the personal views of the [IRS] employees." (IRS's Memo. 14.) In addition, the IRS states that communications as to how to respond to claims by third party taxpayers arising from IRS Publication 80 "reflect the personal opinions of the writers, and not the agency position." *Id.* The court agrees that communications between agencies regarding the agency's as-yet-unofficial stance on the CNMI FICA refund issue are predecisional. The *Vaughn* index describes these documents as related to the making of the agencies' policies on this issue, and the documents are, under the presumption granted the government's affidavits, deliberative. The *Vaughn* index also specifies where documents were withheld under this privilege in full and where only portions were withheld, demonstrating compliance with the segregability requirement. Again, Sellers has presented no arguments to challenge or show inconsistencies within the representations contained in the government's affidavits or *Vaughn* index. Accordingly, the deliberative process privilege exemption applies to the above-cited documents.

      (b)    Attorney-client privilege

Confidential attorney-client communications are also protected from disclosure by Exemption 5. This privilege

> protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services. The privilege also protects communications from attorneys to their clients if the communications "rest on confidential information obtained from the client." In the governmental context, the "client" may be the agency and the attorney may be an agency lawyer.

*Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)).

The IRS claims this privilege for inter- and intra-agency discussions about a third party claim

arising under IRS Publication 80, and the research, investigation, and decisions that went into formulating the IRS's policy. The IRS writes: "These communications involved not only ACCI and CC:TEGE, but also the Counsel to the National Taxpayer Advocate and the competent authority for CNMI." (Def.'s Memo. 16.) The *Vaughn* index reveals that the attorney-client privilege was often asserted interchangeably with the deliberative process privilege; thus, to the extent that the document is exempt under the deliberative process privilege, the court will not analyze it under attorney-client privilege.

The following are the instances where the attorney-client privilege was asserted independently, or in a manner not interchangeable with the deliberate process privilege. The attorney-client privilege was asserted to protect an "additional email of [the] ACCI branch chief assigning various issues for attorneys to research." (Int'l #115-118.) It was asserted to exempt "additional messages between CC:TEGE, CC:NTA and ACCI discussing the continuing issue of claims filed by [third] parties for FICA refunds." (Int'l #124-128.) It appears to have been asserted independently to exempt an email "where [an] International attorney sought SSA's explanation for changes to 2005 version of [IRS Publication 80]." (Int'l #024-031.) The attorney-client privilege was also cited to exclude a portion of the CC:TEGE attorney's notes in drafting a memo about third party refund claims. (Int'l #064-065.)[4] The IRS claimed this privilege for specific portions of each document including one specific email, three lines of third party claims, five paragraphs of an agency memorandum, and eleven lines contained in an attorney's notes. The specificity with which the exempted information is described establishes that the segregability requirement was met.

---

[4] The attorney-client and attorney work product privileges are cited to exempt three lines from Int'l # 061. These lines were already exempted under Exemption 3 and Section 6103 and, thus, the court will not revisit the propriety of withholding them under other exemptions.

In each instance, the government asserts the attorney-client privilege to protect communications between government attorneys and other government agencies, i.e., clients, including documents that contain information about communications between attorneys and agencies. These communications are consistent with those protected by the attorney-client privilege and, thus, the attorney-client privilege exemption applies.

(c)    Attorney work product privilege

Also protected under Exemption 5 is attorney work-product. The Supreme Court held, in *Federal Trade Commission v. Grolier Incorporated*, 462 U.S. 19, 28 (1983), that "attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared." The attorney work-product privilege, for purposes of this exemption, is the same as the privilege set forth in the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."). This privilege protects both deliberative and factual material prepared in anticipation of litigation. *Tax Analysts*, 117 F.3d at 620. In addition, though the litigation need not be commenced, there must be some possibility of litigation. *See In re Sealed Case*, 146 F.3d 881, 885 (D.C. Cir. 1998) (stating, regarding a government lawyer, that "the lawyer acted not as prosecutor or investigator, but rendered legal advice in order to protect the client from future litigation about a particular transaction, even though at the time, neither the FEC nor the DNC had made any specific claim," and recognizing the documents produced as "prepared 'in anticipation of litigation'").

The IRS asserts this privilege for information that was embedded in responsive documents

although the information itself was not responsive to the original FOIA request. In particular, this information was related to third-party claims from which the IRS believes there is a reasonable likelihood litigation will result. Thus, the IRS claims, the information was prepared in anticipation of litigation and is protected by the work product privilege.

The *Vaughn* index reflects only one instance in which the attorney work-product privilege was asserted for specific material independent of any other privilege or exemption. It is asserted to cover one paragraph of the documents labeled CC:TEGE #037-038, which are identified as "[e]mails among CC:TEGE attorneys pertaining to inquiry about [IRS Publication 80] and classification of CNMI employees." That the government asserted the privilege to exempt only one paragraph out of multiple documents indicates that the segregability requirement has been observed. Also, it is reasonable that attorney work-product would be present in such material and, pursuant to the presumption of good faith afforded government affidavits, the court finds that the attorney work-product privilege is applicable to this specific material.

     3.     *Violation of privacy exemption*

Subsection (b)(6) of 5 U.S.C. § 552 (hereinafter "Exemption 6") exempts from production under FOIA "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (2008). The court must first decide whether the requested information, where not contained in personnel or medical files, "constitute[s] 'similar files' within the meaning of Exemption 6." *Reed v. National Labor Relations Board, et al.*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). The exemption is broad and applies "to any '[g]overnment records on an individual which can be identified as applying to that individual.'" *Id.* (quoting *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601-02 (1982)).

If the requested documents meet this threshold, the court must next "identif[y] the relevant privacy interests in nondisclosure and the public interests in disclosure, and determin[e] 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" *Id.* (quoting *National Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). The public interests are judged relative to FOIA's general goal of making transparent the actions of government agencies. "Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *National Ass'n of Retired Federal Employees*, 879 F.2d at 879.

Here, the IRS asserts Exemption 6 to withhold both the last four digits of IRS employee telephone numbers as well as the name of a low-level SSA employee who routed an information request regarding IRS Publication 80 through the SSA offices, but was not otherwise involved in decision-making regarding IRS Publication 80. Specifically, the IRS asserted Exemption 6 with respect to Int'l # 001-003, 018, 020-023, 026-028, 075-076, 109-111, 119, 129-130, 135, 137-139; F/P #091-093143-145. The court agrees that this information is covered by Exemption 6. As a threshold matter, names and phone numbers are the type of information typically found in a personnel file, usually considered confidential by the employee and the employer, and add no illumination to the governmental decision-making process. Thus, the balance between the privacy interests of individuals and the public interest involved rests firmly on the side of non-disclosure. The IRS has demonstrated its adherence to the segregability requirement by withholding only the information necessary to avoid the privacy violation, here, four digits of the phone numbers and the

name of a single non-decision-making employee. Sellers has presented no compelling argument that

such disclosure is a matter of public interest and the court affords the individual privacy interests

substantial weight and, thus, the court finds the withholding of this information appropriate.

      *4.*     *Law enforcement exemption*

      Subsection (b)(7)(C) of 5 U.S.C. § 552 (hereinafter "Exemption 7(C)") exempts from

production under FOIA "records or information compiled for law enforcement purposes, but only

to the extent that the production of such law enforcement records or information could reasonably

be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C)

(2008). As a threshold matter, the IRS "has the requisite law enforcement mandate" to qualify as

a law enforcement agency under Exemption 7(C). *Lewis v. IRS*, 823 F.2d 375, 379 (9th Cir. 1987).

*See also Church of Scientology Int'l*, 995 F.2d at 919-20 (where the court refused to distinguish

between the IRS's criminal investigation division and the Exempt Organization division, finding

them both within the ambit of Exemption 7 as "hav[ing] the requisite law enforcement function for

purposes of the statute."). Again, as with Exemption 6, "the court must balance the privacy interests

involved against the public interest in disclosure." *SafeCard Services, Inc.*, 926 F.2d at 1205 (citing

*Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 762 (1989)).

      The IRS relies on Exemption 7(C) to withhold information compiled in connection with the

investigation of a civil claim filed by a taxpayer on behalf of himself and other third party taxpayers.

In particular, the IRS seeks to withhold the identity of the taxpayer and the taxpayer's attorney.

According to the IRS, this would be an unwarranted disclosure of personal information. The IRS

generally asserts Exemption 7(C), according to the *Vaughn* index, to protect third party names and

phone numbers contained in the responsive documents. In particular, the IRS asserts Exemption

7(C) with respect to Int'l #018, 049-053, 062, 066, 067, 070-74, 076-085, 100-102, 109-111, 131; CC:TEGE #037-039, 041.  In withholding only names and phone numbers of third parties, rather than entire documents, the IRS demonstrates its compliance with the segregability requirement. Also, as with Exemption 6, the privacy interest of the individuals involved are apparent and there is no discernible public interest in disclosing the information.  Thus, the court finds that the IRS appropriately withheld the identified documents under Exemption 7(C).

*Conclusion*

For the foregoing reasons, the IRS's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED this 17th day of March, 2009.

JOHN V. ACOSTA
United States Magistrate Judge